UNITED STATES v. SPAULDING.

UNITED STATES v. CAMERON.

UNITED STATES v. PARSONS.

1. INDICTMENT: CAPTION: JURISDICTION: HELD, that the caption of the indictment in this case, properly defines the jurisdiction in U. S. causes, conferred by the acts of Congress creating the District Courts of the territory; affirming "U. S. v. Beebe," 2 Dak., 292.

2. CONSTRUCTION: SEC. 5421, U. S. REV. STATS.: FALSE PRE-EMPTION PROOF: The false writing specified in the third clause of Sec. 5421, U. S. Rev. Stats., includes one false in respect to the facts embodied therein, as well as one falsely made and forged.

3. SAME: "CLAIM" DEFINED: The word "claim" therein used includes the claim to exercise the right of pre-emption, and the claim to thereby acquire from the United States government title to the public lands.

*Error to the Second Judicial District Court.*

*Hugh J. Campbell*, U. S. Attorney for plaintiff in error, cited:

*United States v. Beebe*, 2 Dak. Rep., 292; *United States v. Adams*, id., 305; Rev. Stats., U. S., Sec. 1910; *United States v. Staats*, 8 How., 41; *United States v. Wilcox*, 4 Blatchford, 389; *United States v. Bickford*, 4 Blatchford, 341; Rev. Stats., U. S., Sec's. 2259, 2261, 2264, 2265, 2266, 226, 2269, 2270, 2272, 2275, 2283, 2284, 2244, 2255, 2442; *Prigg v. Com.*, Pa., 16 Peters, 424; Brightly Fed. Digest, Vol. 1, page 194; Devereaux' Court of Claims, Repts., p. 41; *United States v. Reese*, 4 Sawyer, 622, *cited*, and distinguished; same case reported, 9 Wallace, 13

*Bartlett Tripp, J. W. Losey, and J. R. Gamble*, for defendant in error and other persons indicted for similar offenses, cited:

Attorney General Cushing, 8 Opinions, 72, (1856); Attorney General Bates, 10 Opinions, 57; Attorney General Speed, 11

Opinions, 462; Attorney General McVeagh, Copps Land Owner, Aug. 11, 1881; *Frisbie v. Whitney*, 9 Wallace, 187; Yosemite Valley Case, 15 Wallace, 77; *Bower v. Higbee*, 9 Mo., 26; *Phelps v. Kellogg*, 15 Ill., 135; *Grand Gulf v. Bryan*, 8 S. & M., 268; *People v. Shearer*, 30 Cal., 650; Dwarris on Statutes, 245; Rev. Stats., U. S., Sec's. 236, 1059; *Bonner v. United States*, 9 Wall., 156; *Langford v. United States*, 11 Otto, 345; Rev. Stats. U. S., Sec's. 2477, 2263, 3477; *United States v. Gillis*, 95 U. S., 412; *Dowell v. Cardwell*, 4 Saw., 228; Act of May 18, 1858, 11 Stats. at Large, 290; Act of Sept. 4, 1874, Sec. 13; *Smith v. Lockwood*, 13 Barb., 209; *Thurston v. Prentice*, 1 Man., (Mich.) 193; *Bassett v. Carlton*, 32 Me., 553; *Renwick v. Morris*, 7 Hill, 575; Dwarris' Statutes, page 275, and authorities cited.

MOODY, J. The defendant was indicted in the second district for transmitting and presenting to, and causing to be transmitted and presented to the United States land officers at Sioux Falls, Dakota, a false affidavit, in support of, and for the purpose of procuring, a fraudulent pre-emption entry of public lands, in the name of Melvin Waters, who claimed to exercise the right of pre-emption, and with intent to defraud the United States, knowing it to be false.

The indictment is brought under the last or third clause of section 5421 U. S. Revised Statutes, which reads as follows:

"Every person who transmits to or causes or procures to be transmitted to or presented at, or presents at any office or officer of the government of the United States, any deed, power of attorney, order, certificate, receipt, or other writing in support of or in relation to, any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged or counterfeited, shall be imprisoned at hard labor, for a period of not less than one year nor more than ten years; or shall be imprisoned not more than five years, and fined not more than one

thousand dollars."

The indictment is as follows:

UNITED STATES OF AMERICA,  } Second District Court,
    TERRITORY OF DAKOTA,              November Term, 1881.
        Second Judicial District.  }

In the District Court in and for the Second Judicial District and territory of Dakota, sitting for the trial of all causes arising under the constitution and the laws of the United States, and having and exercising the same jurisdiction in all such cases as is vested in the circuit and district courts of the United States. At a term thereof, begun and held at the city of Yankton in the county of Yankton, in said district and territory, on the eighth day of November, A. D. 1881.

THE UNITED STATES OF AMERICA  }
           v.               }
    DUDLEY J. SPAULDING.  }

The grand jurors of the United States in and for the said Second Judicial District and territory of Dakota, inquiring in and for the body of the said district, of all crimes and public offenses against the laws of the United States, committed and triable in said district; having been first duly and legally impannelled, charged and sworn according to law, upon their oath present; That on the first day of September in the year of our Lord, one thousand, eight hundred and seventy-nine, at a place in said district and territory, and within the jurisdiction of this court, one Dudley J. Spaulding, late of said district and territory, in support of and relation to a certain claim, commonly known and designated as a pre-emption claim of one Melvin Waters, then and there made in the name of the said Melvin Waters, as a pre-emption claimant before one John M. Washburn then and there being the receiver of the United States land office, and before Benjamin F. Campbell then and there being the register of the United States land office at the town of Sioux Falls, in said district and territory, in which said

claim the said Melvin•Waters, then and there claimed the right of pre-emption, and the benefits of the pre-emption laws of the United States, to the following public lands of the United States (here follows description) containing one hundred, fifty-eight and 61-100 acres, and by which said claim the said Melvin Waters then and there claimed said tract of land by pre-emption; unlawfully, and with intent to defraud the United States, did transmit to and present at, and then and there unlawfully, and with intent to defraud the United States, did cause and procure to be transmitted to and presented at a certain office of the government of the United States, to wit: At the United States land office, at the town of Sioux Falls, in said district and territory, and to certain officers of the government of the United States, to wit: To Benjamin F. Campbell then and there being the register of said United States land office, and to John M. Washburn, then and there being the receiver of the said United States land office at said town of Sioux Falls in said district and territory, a certain false certificate and writing, he, the said Dudley J. Spaulding, there and then well knowing the said false certificate and writing to be false, which said false certificate and writing was then and there in the printed and written words and figures following, to wit:

(Then follows what is called "pre-emption proof" and "testimony of witness," and recital of their effect, together with the proper allegations of their falsity, and the indictment proceeds:

"He the said Dudley J. Spaulding, then and there well knowing the said certificate and writing to be false as aforesaid, and he, the said Dudley J. Spaulding, then and there well knowing the false statements aforesaid in said certificate and writing so stated as aforesaid to be false and fraudulent as aforesaid, and he the said Dudley J. Spaulding then and there well knowing said false certificate and writing then and there to contain said false and fraudulent statements aforesaid," (with the usual conclusion.

To the indictment the defendant demurred alleging two grounds.

*First.* That it appears by inspection thereof, that the court in which said indictment was found and is now pending, had and ex-

United States v. Spaulding, Cameron, and Parsons.

ercised two separate jurisdictions of a circuit and district court of the United States, without specifying under which jurisdiction the court was acting at the time of finding said indictment.

*Second.* That said indictment does not state facts sufficient to constitute a crime or offense against the laws of the United States."

The demurrer was sustained, and the United States attorney brings the case here.

The order sustaining the demurrer is general, and includes in its terms both grounds alleged by the defendant, but we are assured the decision below was upon the second ground, and the first is not insisted upon here.

In any event, this court in *United States v. Beebe,* expressly decided this point, and held such a recital in the caption to be proper, and the jurisdiction thereby defined to be the precise jurisdiction conferred by the act of Congress creating the district courts. To that decision we adhere.

The demurrer for insufficiency presents two questions.

*One.* Whether the false writing spoken of in the third clause of Sec. 5421, includes one false in respect to the facts embodied therein, as well as one falsely made or forged.

*Two.* Whether the word "claim" therein used, includes the claim to exercise the right of pre-emption, and the claim to thereby acquire from the United States government title to the public lands.

No difficulty is encountered in determining the first point. This identical question, under the same statute, has been definitely decided by the Supreme Court of the United States, whose decisions are of course binding upon this court.

In *United States v. Staats,* 8 Howard, 41, the defendant was indicted for transmitting and presenting to the commissioner of

pensions, in support of the application of one David Goodhard, for a pension, an affidavit, genuine as to the execution, but false as it respected the facts embodied in it.

In that case the court uses the following language:

" The court are of opinion that the offense charged in the indictment comes within the statute.

" The only doubt that can be raised is whether the writing transmitted or presented to the commissioner in support of the claim for a pension, should not within the meaning of the statute, be an instrument forged or counterfeited in the technical sense of the term; and not one genuine as to the execution, but false as it respects the facts embodied in it."

" The instruments referred to in the first part of the section, the false making or forging of which, with the intent stated, is made an offense, probably are forged instruments in a strict technical sense; and there is force therefore in the argument, that the subsequent clause, making the transmission or presentation of deeds or other writings to an officer of the government, a similar offense, had reference to the same description of instruments."

" But this is by no means a necessary conclusion upon the words of the statute. Indeed upon this construction it is not easy to see the materiality of the clause; because the uttering and publishing of the forged instruments mentioned in the first clause, as true, is made an offense, the same as the forging; and it is quite clear, that the acts provided against in the subsequent clause amount to an uttering and publishing. If restrained therefore to forged instruments the clause would seem to be unnecessary."

" The deeds and other writings mentioned are not connected with those in the preceding paragraph, as would have been natural and almost of course, if intended to describe similar instruments. The language is 'any deed, power of attorney' etc., not, the aforesaid deed, which words must be in effect interpolated, upon the

construction contended for."

" The clause therefore, may well be regarded as providing for a distinct and independent offense—one essential to the protection of the government against fraudulent claims; and which consists in the transmission or presentation of false or counterfeit papers to any officers of the government in support of an account or claim, with intent to defraud."

" The case is within the mischief intended to be guarded against, and also within the words     *     *     *     A genuine instrument containing a false statement of facts, used in support of a claim, the party knowing it to be false, and using it with the intent to defraud, presents a case not distinguishable in principle, or in turpitude or in its mischievous effects, from one in which every part of the instrument is fabricated; and when the one is as fully within the words of the statute as the other, we may well suppose that it was intended to embrace it."

We have quoted thus at length from the opinion of the court in that case, because the decision not only disposes of the first question mooted in this case, but several principles of construction are enunciated, which have an important bearing upon the further consideration of this issue.

Upon the proper construction to be given the term "claim," as used in the statute, more doubt exists.

In the case of the *United States v. Wilcox*, 4 Blatchford, 389, the defendant had been indicted under this same clause of section 5421, for transmitting to, and presenting at, the office of the commissioner of pensions a certain false, forged, and counterfeited writing, in support of, and in relation to, a claim which he was making before the commissioner, for "bounty land."

Upon a demurrer to the indictment, the point was squarely made, that the word "claim" in the statute, meant only a claim for money, and therefore, the claim in question being described

as a claim for "bounty land," did not come within the meaning and intent of the law.

That court in deciding the question raised by the demurrer says:

" In respect to each " (of the papers described) " it was argued that the word 'claim' as used in the statute, can have reference only to a claim for money, and does not embrace a claim for bounty land."          *          *

" The careful addition after the word 'account,' of a term of a much broader significance, and the use of the very comprehensive language which immediately precedes these terms, satisfy me that it was the intention of Congress to embrace all claims, whether for land or money, and thus the construction insisted upon by the defendant cannot be maintained.

See also *United States v. Bickford*, 4 Blatchford, 341.

Under the pre-emption laws the words "claim" and "claimant," are frequently used in connection with the right to thus acquire title to the public lands.

By Section 2264 U. S. Rev. Stat., the settler is required to file a written statement "declaring his intention to *claim* the land under the pre-emption laws."

"Section 2265 provides that "every *claimant* under the pre-emption laws for land          *          *          *          is required to make known his *claim* in writing to the register          *          * otherwise his *claim* shall be forfeited          *          * "

Section 2266:  "In regard to settlement          *          *          the pre-emption *claimant* shall be          *          * "

Sec. 2267:  " All *claimants* of pre-emption rights          *.          * shall make the proper proof and payment for the lands *claimed* *          * "

Sec. 2269.  " When a party entitled to *claim* the benefits of the pre-emption laws dies before consummating his *claim*          *          * "

United States v. Spaulding, Cameron, and Parsons.

Sec. 2270. " Whenever the vacancy of the office, either of     *
*     renders it impossible for the *claimant* to comply     *     *
the party *claiming* " (shall not be prejudiced) " in respect to any
matter essential to the establishment of his *claim*     *     * ".

And so in numerous other sections, is the right of pre-emption
entry spoken of as a *claim*. It is frequently spoken of also, as a
*right*. It is by the law a right demandable, to be exercised under the
provisions and conditions of the law. True, it is not a vested
right as against the government, until due proof is made and the
money paid to the proper officer, and is therefore liable to be de-
feated by a legal transfer of the land to another; by an authorized
withdrawal of the lands from the operation of the act, or by a re-
peal of the law.

Neither is a claim for pension or bounty lands a vested right,
and such claim may be defeated by a repeal of the law, or in other
ways.

What is a claim? "It is, in a just, judicial sense, a demand of
some matter as of right, made by one person upon another, to do
or to forbear to do some act or thing as a matter of duty." *Prigg
v. Commonwealth of Pennsylvania*, 16 Peters, 615.

Noah Webster defines "claim" as, "To call for; to ask or seek
to obtain by virtue of authority, right, or supposed right; to chal-
lenge as a right; to demand as due;" "To be entitled to anything
as a right; a demand of a right or supposed right; a right to claim
or demand; a title to any debt, privilege, or other thing in possession
of another; that to which any one has a right; as a *settler's*
claim."

A claim to exercise the right of pre-emption is a claim made to
a benefit arising under the wise and beneficent laws of Congress,
by which the actual and *bona fide* settler can secure title to the
government lands at a mere nominal price; and so long as the law
exists, and the lands are subject to pre-emption entry, the settler

can demand of the government officers as of right, to be permitted to thus obtain the title to the public lands, upon complying with the conditions upon which the right depends.

We think such a claim comes within the definition of the term "claim" as used in the clause of section 5121 under consideration.

Certainly it "is within the mischief to be guarded against, and also within the words of the statute."

No other statute seems to cover the case of a fraudulent procurement of title to the public lands under the pre-emption acts. It is not to be presumed that Congress has neglected the important duty of providing protection both to the government and the actual settler against the fraudulent and wicked acts and attempts of designing and unscrupulous persons, by means of false affidavits, and other false and forged writings, in procuring title, at a mere nominal price, of vast bodies of public lands, to the detriment of the public interests, by retarding the development of the country, and to the exclusion of the actual and *bona fide* settler, or to his oppression by compelling him to purchase of the speculator at a greatly enhanced price.

The supposed remedy afforded by a prosecution for perjury or subornation of perjury, a prosecution always doubtful and proverbially difficult to maintain, is in no sense an adequate remedy. It may, and no doubt does occur, that the proof rests wholly upon forged instruments. In such case, a prosecution for perjury would not lie; neither would one for forgery, if the term "claim," as used in the statute, does not include a pre-emption claim; as the use of forged and counterfeited writings is put upon the same footing with the use of writings false in the statement of facts.

While the area of public lands was great, and the policy of the government allowed of their disposal at public or private sale for cash, the right of pre-emption was perhaps not so valuable a right, and not likely to be so zealously guarded as now, when the public

lands valuable for agriculture, are rapidly being exhausted, and the wise policy has been adopted of reserving them for the use of the actual settler, who will make thereon his home and a home for those dependent upon him.

A claim to exercise the right of pre-emption, or a homestead right, is too valuable, especially in this territory, where frequently now its perfection at once raises a man from poverty to comfort, and sometimes almost affluence, to permit the unmixed evil to ensue of throwing open wide the door for fraud, and putting these valuable lands at the mercy of the unscrupulous and rapacious speculator, if the law by any reasonable construction has interposed a barrier.

A presumption of innocence always rests upon the person charged with a public offense, and is only removed by proof of his guilt beyond a reasonable doubt; but no presumptions are to be indulged in against the existence of a law defining and punishing an offense. On the contrary, if an evil exists, and by a fair interpretation such evil is found to be within the spirit and intent of an act affording a remedy against it, courts are to apply such remedy in a spirit of liberality, and not by any narrow rule of construction defeat the object and purpose of the law; more especially should this be the guide where the mischief is within the words of the act.

That the acts charged in the indictment before us constitute an evil against which some remedy is necessary, will not be doubted.

It will be seen that very respectable authority has held that the word "claim" in the statute includes a claim for lands—"bounty lands."That is in substance a claim of a right to acquire title to some portion of the public domain, under and by virtue of the law of Congress granting bounty lands to certain classes of persons who have complied, and can comply with the conditions upon which the grant is to become operative as to them. A claim to

pre-empt the public lands, is a claim of a right to acquire title to some portion of the public domain, under and by virtue of the pre-emption laws of Congress allowing such title to be acquired by such persons as are qualified, and who do comply with the conditions upon which such privilege is granted.

It follows, the acts charged in the indictment to have been committed by the defendant, do constitute an offense within the meaning of the third clause of section 5421 U. S. Revised Statutes.

Our attention was called to the case of *United States v. Reese*, 4 Sawyer, 622, as holding a contrary doctrine to that in *United States v. Wilcox*. Upon an examination of that case it will be seen that the question of what constitutes a "claim," within the third clause of said section, was not before the court. Some remarks of the judge would indicate that he held views contrary to those expressed in *U. S. v. Wilcox*, while the case was before him at the circuit; but the case went to the Supreme Court and was reversed, and it is very significant that although the same judge delivered the opinion then, he expresses no opinion upon this point, but says, with reference to the ground relied upon in the circuit court, to wit: That the acts charged did not constitute any offense under the laws of the United States, which was the first ground in order of statement: "Upon the first of these we express no opinion."

We do not regard that case as authority against our position in this.

The judgment and order of the district court are reversed and the cause remanded.

Two other cases involving the same question were submitted at the same time with this, to wit: *United States v. Cameron*, and *United States v. Parsons*. The same order is made in each, except as in the other cases some of the courts are held to be bad, the order prepared provides particularly for their disposition.

Justices Kidder and Hudson concur.

EDGERTON, C. J., *dissenting*—The main, and perhaps only question involved in this case, is whether a pre-emption claim is an "*account or claim*," within the meaning of section 5421 of the Revised Statutes of the United States. If it is, the indictment is good, if not, the indictment is bad. It is claimed by the prosecution that "if an evil exists, and by a fair interpretation, such evil is found to be within the spirit and *intent* of an act affording a remedy against it, courts are to apply such remedy in a spirit of liberality, and not by any narrow rule of construction *defeat* the *object* and *purpose* of the law; more especially should this be the guide, when the mischief is within the words of the act." If this indictment is to be tested solely by this rule, or by the older and more explicit rule of the common law which says, " the best and surest mode of expounding an instrument is by referring to the time when, and circumstances under which it was made," let us examine the results. Sec. 5421 of the Revised Statutes was originally passed on March 3, 1823. While in certain cases persons were allowed to purchase land previously occupied by them, and this privilege was sometimes called the right or privilege of pre-emption, no general pre-emption law was passed for some years after 1823.

There had been some local pre-emption laws passed prior to that date, but I think none were in force at the date of the passage of Sec. 5421.

The lands have become more valuable within only a few years. If at the time of the passage of Sec. 5421, and for years thereafter, there were no pre-emption claims, either in law or in fact, can it be claimed that the rule of interpretation above cited, will apply to this case? Was this " within the mischief *intended* to be guarded against and within the words?"

Sections 2264, 2265, 2266, 2267, 2269, and 2270 of the Revised Statutes, cited to show the meaning of the word claim, were afterwards made assignable.

each passed years after the section under which this case was brought, became a law.

So far as I am informed this is the first case (unless the case of the *United States v. Reese,* hereinafter cited is claimed to be one) ever brought into our courts, attempting to place this construction on this law; although this section has been enacted, and on the Statute books for nearly 60 years, and the pre-emption law has been in force, and frequently violated, for over 40 years.

While all the dangers and perils so urgently set forth by the prosecution may exist and may imperil the interest of the public, unless this new construction is given to the law, I apprehend greater dangers from a forced construction placed upon the laws by the courts to meet new emergencies.

The only case cited by the prosecution which can possibly have any weight in support of this construction, is the case of the *United States v. Wilcox,* decided by District Judge Hall in the Northern District of N. Y., and reported in 4 Blatchford, page 388.

And even that case in my opinion, upon a careful examination fails entirely as an authority to support the theory of the prosecution. That was a claim for a bounty land warrant. The judge, to be sure, uses the word bounty land; but the claim was solely and only for a bounty land warrant; and in that case the defense urged that the claim contemplated in the statutes was for money only, but Judge Hall held that it extended to and included the bounty land warrant.

The universal rule is that the expressions of courts in decisions are to be construed with reference to the question under immediate consideration. Lands were not under consideration, only land warrants. As early as 1812, it was expressly provided by act of Congress, that in all cases where parties should be entitled to bounty lands, warrants should be issued to them, and these were

The Crimes Act of the United States every where uses the word bounty land warrant. See Sec. 5420 of the Revised Statutes. The decision of Judge Hall is undoubtedly correct as to this species of government obligations. The bounty land warrants were issued by the government and went into the market; were bought and sold like bankable paper, assigned in blank, and had a known commercial value.

Not so with pre-emption claims; they were never bought nor sold, no more than claims for promotion in the civil and military service of the government.

I must respectfully but most firmly dissent, in the interpretation by our courts of our penal statutes whereby the life or liberty of the citizen is involved, from the doctrine that, " A claim to exercise the right of pre-emption, or a homestead right, is too valuable, especially in this territory, where frequently now its perfection at once raises a man from poverty to comfort and sometimes almost affluence, to permit the unmixed evil to ensue of throwing open wide the door for fraud and putting these valuable lands at the mercy of the unscrupulous and rapacious speculator, if the law by any reasonable construction has interposed a barrier."

Chief Justice Bronson says " Courts of justice should take care that they are not misled by the hardship of a particular case, or by the passion or prejudice which may be excited against a particular individual, to make a precedent which would run counter to well established principles. It should never be forgotten that a wrong-doer, however great the wrong may be, has not forfeited all his rights, and although the individual may be entitled to no sympathy, care should be taken that the blow which destroys him does not inflict a wound upon Justice herself." Lord Tenterden is reported to have said, "Hard cases make bad law."

The court say in the *United States v. Reese*, reported in 5 Dillon, as follows:

United States v. Spaulding, Cameron, and Parsons.

"It must be remembered that this is a penal statute, and it must therefore be construed strictly.   In the office of the interpretation of statutes, courts, particularly in statutes that create crimes, must closely regard and ever cling to the language which the legislature has selected to express its purpose.   And when the words are not technical, or words of art, the presumption is a reasonable and strong one that they were used by the legislature in their ordinary, popular, and general signification.   Statutes enjoin obedience to their requirements, and, unless the contrary appears, it is to be taken that the legislature did not use the words in which its commands are expressed, in any unusual sense.   Therefore, the law is settled in construing statutes; the language used is never to be lost sight of, and the presumption is that the language used is used in no extraordinary sense, but in its common, every day meaning.   The legitimate function of courts is to interpret the legislative will, not to supplement it or to supply it.   The judiciary must limit themselves to explaining the law; they cannot make it.   It belongs only to the legislative department to create crimes and enjoin punishments.   Accordingly, courts, in the construction of statutable offenses, have always regarded it as their plain duty cautiously to keep clearly within the expressed will of the legislature, as otherwise they may hold an act or an omission to be a crime, and punish it, when, in fact, the legislature had never so intended.   (*United States v. Clayton*, 2 Dillon, 219.)   Statutes creating crimes will not be extended by judicial interpretion to cases not plainly and unmistakably within their terms.   If there is a fair doubt whether the act charged in the indictment is embraced in the criminal prohibition, that doubt is to be resolved in favor of the accused."

"And again, if this rule is violated," says Chief Justice Best, "the fate of the accused person is decided by the arbitrary discretion of the judges and not by the express authority of the laws."

Chief Justice Marshall says, in delivering the opinion of the court in *United States v. Wiltberger*, reported in 5 Wheaton, page 96.

" To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity or of kindred character, with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases."

There are certain maxims which have been adhered to by courts for ages in interpreting doubtful words and phrases, and one of great authority is " The coupling of words shows their acceptance in the same sense."

The coupling of the words of " accounts or claims " has a peculiar significance, and dispels any other theory than that they are in fact " *ejusdem generis.*"

The words " accounts or claims " are quite frequently associated or coupled together in the laws and in the opinions of the attorney generals, and in no other instance can it be assumed that the interpretation now claimed is even possible. · " *Noscitur a sociis.*" " The meaning of a word may be ascertained by reference to the meaning of words associated with it." This rule has long been relied upon by the courts in determining the intent of the law-makers in the use of words susceptible of different interpretations. , The association of the word " accounts or claims " in this section was proper and logical. An account is a statement of charge in money and may have two sides to it, when a balance is finally struck in favor of one side or party in the account. "A claim sup-

United States v. Spaulding, Cameron, and Parsons.

poses an unacknowledged right." See Smith's Synonyms. Consequently the propriety will appear of the association of these words to meet both kinds of demands against the government.

For the reasons above given, I do not think the opinion of Judge Hall, in the case of the *United States v. Wilcox*, throws any light on this question, except, perhaps, to show that the furthest limit any court has heretofore gone, is to include. *land warrants* within the meaning of the word claims, for the reason, I think, that these land warrants (if not technically) are treated in the markets of the country as obligations of the government. The only reported case which throws any light upon this question, so far as I am informed, is the case of the *United States v. Reese*, reported in 4 Sawyer, U. S. Circuit Courts Reports, page 629. That case was tried before Mr. Justice Field, and he says in that case upon rendering the decision of the circuit court, after quoting Sec. 5421, being the section under which this indictment is brought: "The first paragraph covers the altering or forging of such instruments; the second paragraph, the uttering or publishing them as true; and the third their transmission or presentation to any office or officer of the government.

"Neither of them applies to an instrument forged for the purpose of obtaining a cession' of land from the United States, or the confirmation of a claim to land alleged to have been granted by the Mexican government. There was no act of Congress which reached a case of this nature until the eighteenth of May, 1858, when an act was passed covering all cases of the altering or forging of documents or title papers, or uttering or publishing them as true, for the purpose. of establishing against the United States any *claims* to land in California. That act was passed, it is believed, in consequence of the defects in existing legislation, suggested by this case of Limantour."

This case was reviewed in the Supreme Court of the United States, and reported in 9 Wallace, page 13. Mr. Justice Field, in

rendering the decision of the Supreme Court says: "As a defense to this action, the defendant relied in the circuit court upon several grounds, the principal of which were these:

*First.* That the acts charged in the two indictments did not at the time of their alleged commission constitute any offense under the laws of the United States; and, as a consequence, that the indictments and all proceedings thereunder, including the requiring of bail for the appearance of the party indicted, were void.

*Second.* That if the indictments and proceedings thereunder were not void, the stipulation of August, 1857, for a postponement of the trials, released the sureties from liability on their recognizance; and,

*Third.* That the recognizance was void in embracing the amount required as bail upon both indictments.

The third ground here stated is not pressed in this court. The other two grounds are substantially the same which are urged here, differing only in their form of statement. Upon the first of these we express no opinion. Upon the second we are of opinion that the circuit court erred."

Thus it will be seen that while Mr. Justice Field had decided in the circuit court that the word claims in Sec. 5421, would not bear the interpretation now claimed in this case, the Supreme Court declined to review that portion of the opinion, and reversed the case upon another and different question.

Consequently the opinion of that eminent Judge as declared at the circuit, remains, so far as the question now under consideration is concerned, unreversed and authoritative.

But to follow the history of this case still further, while this question was before the United States courts in California, Congress was appealed to, and on May 18, 1858, passed a law expressly providing for the punishment of the false making, forging, or uttering any evidence of right, title, or *claim* to *lands* etc. See

Sec. 2471 of the Revised Statutes.    This section follows the general form of Sec. 5421, but embraces specifically claims to land, and is confined for some reason, by its terms to frauds committed in reference to lands in California.    If the construction claimed by the prosecution in this case be correct, what was the necessity in 1858, for further legislation.    Undoubtedly this law of 1358, as all proposed changes in the penal laws are, was fully considered by the judiciary committees of both houses, comprising some of the ablest lawyers in Congress.    The law was then passed.    This, to say the least, was a legislative construction of this very question now before us.

One of the ablest judges of the Supreme Court of the United States has decided this question, and his decision stands unreversed.

Congress has given to it its interpretation; the different departments of the government have accepted the doctrine for sixty years, and now we are called upon to reverse this uninterrupted series of authorities.

In my mind neither reason nor authority justifies the reversal.

The judgment of the District Court should be

AFFIRMED.